Turley, J.
delivered the opinion of the court.
It appears from the pleadings and proof in this case, that the complainant, Wm. W. Lea, on the 21st day of September, 1837, became bound as surety for one John Page, on a bill single, for the sum of four hundred dollars, to the defendant, Philip Dozier, payable at two months after date. Afterwards, to wit, on the 30th day of July, 1838, the bill single being over due and unpaid, John Page, the principal obligor, executed a deed of trust to Philip Dozier, conveying to him various articles of property, which need not here be specified, as security for this debt, and for other responsibilities incurred by him of a subsequent date; in consideration of which, as the bill alleges, Dozier agreed to postpone the collection of this debt for the space of six months; all of which was done without the knowledge or consent of the complainant, Lea.
The defendant insists that this deed of trust was intended by him to operate only as security for his after accruing liabilities, and that he never designed that it should embrace the debt of four hundred and two dollars •secured to him by the bill single, to which Lea was a *449 party, but that the same was included therein without his knowledge or consent, by the act and procurement of Page. He also insists that there is no valid and obligatory agreement created by the deed of .trust binding him to postpone a suit on the bill single for the space of six months, or for any other period of time; but that he was on the contrary free to sue upon the same at any peri'od of time he might think proper; which he after-wards did against Lea, as surety, on the 24th day of June, 1845, as he might well do. This suit was so prosecuted that judgment was at the July term, 1847, of the circuit court of Gibson county, rendered against.Lea upon the bill single, for the sum of four hundred and ninety-three dollars and cost of suit, to enjoin the collection of which this bill is filed.
The principles of law involved in the discussion of the case, are well settled, and admit of no controversy whatever; the only point for consideration being as to their applicability to the case.
Mr. Story, in his treatise upon equity jurisprudence, sec. 32, says: “if a creditor, without any communication with the surety and assent on his part, shall stipulate in á binding manner, upon sufficient consideration, for further delay and postponement of the day of payment of the debt, that will operate in equity as a discharge of the surety.” The correctness of this principle has again and again been recognized by this court. See the cases of Peay vs. Poston, 10 Yerg.; Washington vs. Tait, adm’r, 3 Hum.; Wilson vs. Langford, adm’r, 5 Hum. In the last case, the court say: “The agreement between the creditor and the principal debtor for delay, which will entitle the sureties to be discharged in equity, must be a valid and binding agreement, one which imposes upon the creditor a legal *450 obstacle for the time to the prosecution of an action upon the original security according to its terms.”
Then, the question presented directly for our consideration is, whether the agreement to delay the collection of the debt, which forms the subject matter of this suit, be of this character, viz, a valid and binding agreement not to sue within the space of six months from the date of the deed of trust, upon the bill single.
The word agreement is a technical word, and means a promise supported by a good and valid consideration to do or not to do a particular thing.
That portion of the deed of trust which it is contended creates the agreement on the part of the defendant, reads as follows: “Whereas the said John Page is indebted to the said Philip Dozier in the sum of four hundred dollars, by a note of hand dated 21st of September, 1837, and due 21st of November, 1837, the said Philip Tlozier being willing to wait six months longer with said John Page upon having his debt and interest secured; and the said John Page being willing to give him a certain assurance that his money shall be paid in six months; and whereas said Philip Dozier has this day entered his name as security to two injunction bills, &c.: therefore, this indenture witnesseth, that the said John Page, as well in consideration of securing the said Philip Dozier in the faithful payment of the debt and interest as aforesaid, and also securing him as surety on the two injunction bills, hath this day, granted, bargained, sold, transferred, and assigned, and set over to the said Philip Dozier, his heirs and assigns, a certain tract of land, &c., in trust, that if the said note for the sum of four hundred dollars and lawful interest shall not be truly paid off and discharged, by the expiration of six months from this date, *451 by the said John Page, or some other person for him, or if the said Philip Dozier shall be made liable on the injunction bills, then and in that case the said Philip Dozier,,in executing the trust hereby taken upon himself, may advertise the said property, real and personal, twenty days in a newspaper printed in Trenton, Gibson county, Tennessee, and by written advertisement in four of the most public places, one of which shall be at the courthouse door in Trenton, and then expose to the highest bidder the said land, &c., and sell the same.”
Now, it is true thatr there is in this deed of trust no express agreement on the part of Dozier that he would delay suit against Page upon the bill single; yet it is necessarily implied. This debt, as far as we can see, constituted the principal part of the consideration for the execution of the deed of trust. We are informed that it was included because the amount of property conveyed was in value too great for a mere indemnity against the liability assumed by Dozier, as surety for Page in the injunction bills; and Dozier having accepted of this security, is, upon legal principle bound by his implied contract not to sue within the specified time of six months, for which Page unquestionably intended to contract, and for which, we have no hesitation in saying, he did contract. Dozier might have objected to the execution of the deed of trust in the form in which it existed when it came to his knowledge, if he had thought proper, provided it had not been originally intended that this particular debt should be embraced in it; but this he did not do; but, on the contrary, accepted the trust, and why he has not executed it so as to make it effectual in securing the payment of this debt, does not appear from the record. That he must have looked to it for *452 payment, we think, is evidenced by the fact that it bears date the 30th day of July, 1838, eight months after the bill single fell due; and he never thought proper to resort to his remedy at law against the surety, Lea, till 'the 24th day of June, 1845, seven years after the execution of the deed of trust. We are constrained to believe that the only rational mode of explaining this unaccountable delay on his part, is that he considered the deed of trust as ample security for the debt; and not being disposed to enforce its execution against Page, dallied with the transaction, until the trust fund (a considerable portion O' of which was personal property) was wasted and consumed by Page, so that his debt was to be lost unless it could be made out of Lea.
But, be this as it may, we have no difficulty in holding that there was a valid and binding agreement created by the deed of trust between Dozier and Page for a postponement of the bill single, for the additional period of six months from the date of the deed; which, in equity, entitles the complainant to be discharged from liability thereon.
The decree of the chancellor will therefore be reversed, but without cost.